41 A.3d 1033 (2012)
304 Conn. 710
Nicholas RUSSO et al.
v.
CITY OF WATERBURY et al.
Nos. 18392, 18588.
Supreme Court of Connecticut.
Argued December 7, 2011.
Decided May 15, 2012.
*1036 Sheila A. Huddleston, with whom were Gary S. Starr and, on the brief, Michelle L. Querijero and Brian Clemow, Hartford, for the appellants-appellees (defendants).
Richard O. LaBrecque, with whom was Francis J. Grady, Waterbury, for the appellees-appellants (named plaintiff et al.).
Jason M. Lipsky, for the appellee (substitute plaintiff Terese Salvatore).
ROGERS, C.J., and NORCOTT, PALMER, ZARELLA, McLACHLAN, HARPER and VERTEFEUILLE, Js.
McLACHLAN, J.
This appeal and cross appeal concern the authority of the named defendant, the city of Waterbury (city), under its city charter to offset the pension benefits of the plaintiffs, Eugene Coyle, Cecile Lynch, Delores Acas, Paul Salvatore and Nicholas Russo,[1] by the heart and hypertension benefits they received pursuant to General Statutes § 7-433c. The defendants, the city and the city's retirement board (board), appeal, and Coyle, Lynch, Acas and Russo (cross appellants) cross appeal, from the judgment of the trial court rendered in favor of the plaintiffs on their breach of contract claims.[2] The substitute plaintiff, Terese Salvatore, administratrix of the estate of Paul Salvatore, is not a party to the cross appeal.[3] In their appeal, the defendants argue that: (1) *1037 the trial court improperly concluded, with respect to Coyle, Lynch, Acas and Paul Salvatore, that their respective collective bargaining agreements conflicted with § 2761 of the 1967 Waterbury city charter (city charter),[4] which allows the city to offset the plaintiffs' pension benefits based on their heart and hypertension benefits; and (2) although the trial court properly interpreted Russo's collective bargaining agreement to permit the city to offset his pension benefits by his heart and hypertension benefits, that court improperly failed to determine whether Russo's combined pension and heart and hypertension benefits exceeded the cap set forth in the agreement, thus permitting an offset.[5] The cross appellants claim, inter alia, that the trial court improperly dismissed as moot Russo's claim that the defendants are barred under the doctrine of equitable estoppel from offsetting their pension benefits because the defendants historically had not done so,[6] and that, in the event that *1038 we reverse the judgment of the trial court as to the breach of contract count, the case must be remanded to the trial court for a determination of whether the cross appellants established their right to equitable estoppel. We agree with the defendants' claims, but disagree with the plaintiffs' and cross appellants' claims. Accordingly, we reverse the judgment of the trial court in part, direct judgment in favor of the defendants on all claims except Russo's claim for breach of contract, and remand the case for a new trial on that claim.
The trial court found the following undisputed facts. In August, 2006, the city hired Frank May, an attorney, to review the city's past practices, labor contracts and legal authority pertaining to the issue of offsetting pension payments by heart and hypertension benefits. May presented his findings at the December 14, 2006 meeting of the board, stating that, pursuant to the city charter, the Waterbury code of ordinances, applicable collective bargaining agreements and the relevant provisions of the General Statutes, the board was obligated to impose certain pension offsets. At the same meeting, the retirement board adopted a resolution directing the city's pension and benefits manager, his successor and the city pension office to take any necessary actions to implement such pension offsets in accordance with the applicable documents and charter provisions. Shortly thereafter, the plaintiffs, all of whom had been receiving both pension and heart and hypertension benefits, received letters advising them that their pension payments would from that point on be offset by the amount of their heart and hypertension benefits.
Russo worked as a firefighter for the city. Pursuant to the July 1, 1983, to June 30, 1986 collective bargaining agreement between the city and Local 1339, International Association of Firefighters, AFL-CIO (firefighters union), he had been awarded a disability pension of $1908.61 per month and heart and hypertension benefits of $2409.14 per month. His pension has been completely offset by his heart and hypertension benefits since January, 2007.
Acas is the surviving spouse of a Waterbury police officer who was awarded a disability pension upon his retirement pursuant to the 1979 to 1982 collective bargaining agreement between the city and the Waterbury Police Union, Local 1237 and Council 15, American Federation of State, County and Municipal Employees, AFL-CIO (police union), and was also awarded heart and hypertension benefits pursuant to § 7-433c. When her spouse passed away, Acas was awarded a widow's pension of $759.07 per month, and $1993.17 per month in heart and hypertension benefits pursuant to § 7-433c. Acas' pension has been completely offset by her *1039 heart and hypertension benefits since January, 2007.
Paul Salvatore, a retired Waterbury police officer, had been awarded a disability pension in the amount of $2236.48 per month pursuant to the 1984 to 1986 collective bargaining agreement between the city and the police union. He also was awarded heart and hypertension benefits in the amount of $452.71 per month. His pension was offset by the amount of his heart and hypertension benefits from January, 2007, until his death.
Coyle, a retired Waterbury police officer, was awarded a service pension pursuant to the July 1, 2000, to June 30, 2005 collective bargaining agreement between the city and police union in place at the time of his retirement. Effective June 30, 2003, he also was awarded heart and hypertension benefits of $589 per week for 171.6 weeks.[7] In July, 2007, he was awarded an additional twenty-six weeks of benefits, which he received until April, 2008. Coyle currently receives no heart and hypertension benefits. His service pension was offset from February, 2007, until approximately April 14, 2008.[8]
Lynch, the surviving spouse of a city firefighter, was awarded a widow's pension pursuant to the July 1, 1980, to June 30, 1983 collective bargaining agreement between the city and the firefighters union. She was awarded a pension in the amount of $886.57 per month and heart and hypertension benefits in the amount of $3432.54 per month. Her pension has been completely offset by her heart and hypertension benefits since January, 2007.
In 2007, the plaintiffs, as well as other recipients of pension and heart and hypertension benefits, filed various actions against the city, the board and other city personnel. In January, 2008, the plaintiffs filed this exemplar action against the defendants, alleging that application of the offset constituted a breach of contract, that the failure to provide a meaningful opportunity to be heard prior to application of the offset deprived the plaintiffs of their right to federal procedural due process in violation of 42 U.S.C. § 1983, and that application of the offset is barred by the doctrine of equitable estoppel due to the defendants' historic failure to apply it.[9] Following a trial to the court, the trial court found in favor of the plaintiffs on their breach of contract claims only. The court concluded that, as to Paul Salvatore, Acas, Coyle and Lynch, because the application of the offset reduced the "guaranteed minimum amounts" set forth in the plaintiffs' respective bargaining agreementswhich agreements contained no provisions expressly allowing pensions to be offsetthe implementation of the offsets conflicted with the bargaining agreements and thus constituted a breach of contract. As to Russo, the court recognized that the collective bargaining agreement applicable to him expressly allowed an offset if the combined total of pension and heart and hypertension benefits exceeded the maximum amount of the pension that could have been awarded to him *1040 pursuant to the bargaining agreement. Without making any finding as to whether the total of Russo's heart and hypertension and pension benefits exceeded the maximum pension amount payable pursuant to his bargaining agreement, the court concluded that the offset constituted a breach of the bargaining agreement. The court dismissed as moot Russo's equitable estoppel claim and determined that it need not reach the remaining plaintiffs' equitable estoppel claims in light of its conclusion in their favor on the breach of contract claims. Finally, the trial court rejected the plaintiffs' due process claim on the merits. This appeal and cross appeal followed.

I
We begin with the defendants' claim in their appeal that, with respect to Acas, Paul Salvatore, Coyle and Lynch, the trial court improperly concluded that those plaintiffs' respective collective bargaining agreements conflict with § 2761 of the Waterbury city charter and therefore preclude the city from applying the city charter's offset. The defendants claim that the trial court improperly interpreted the bargaining agreements as establishing a mandatory minimum payment of pension benefits, which may not be offset. Rather, the defendants argue, because the bargaining agreements do not indicate otherwise, § 2761 of the city charter should be read into the bargaining agreement, consistent with the established rule that bargaining agreements are interpreted to incorporate existing statutes, in the absence of an indication to the contrary. See Hatcho Corp. v. Della Pietra, 195 Conn. 18, 21, 485 A.2d 1285 (1985). The plaintiffs respond that the mandatory language of the pension formula provisions in each of the bargaining agreements unambiguously grants specific pension benefits, that the offset set forth in § 2761 conflicts with that unambiguous grant and, therefore, the offset cannot be applied. We agree with the defendants that there is no conflict between the bargaining agreements and § 2761 of the city charter. Accordingly, we conclude that the city did not breach these collective bargaining agreements by applying the city charter offset to the pensions provided in the bargaining agreements.
We first review the principles that guide our analysis of this issue, which requires interpretation of the pertinent bargaining agreements, the city charter and various statutory provisions. Principles of statutory construction, subject to plenary review, govern our interpretation of the city charter and the applicable sections of the General Statutes. See Honulik v. Greenwich, 293 Conn. 698, 710, 980 A.2d 880 (2009) ("[a]s with any issue of statutory construction, the interpretation of a charter or municipal ordinance presents a question of law, over which our review is plenary" [internal quotation marks omitted]); Kelly v. New Haven, 275 Conn. 580, 607, 881 A.2d 978 (2005) (same). "Principles of contract law guide our interpretation of collective bargaining agreements." Honulik v. Greenwich, supra, at 710, 980 A.2d 880. When, as in the present case, the trial court based its interpretation solely on the language of the contract, our standard of review is plenary. See Garcia v. Hartford, 292 Conn. 334, 341-42, 972 A.2d 706 (2009). Similar rules of construction apply to each, under which we look to the text to determine whether a plain intention is manifested and to extratextual sources only when the text is ambiguous. See General Statutes § 1-2z (statutory construction); Murtha v. Hartford, 303 Conn. 1, 7, 35 A.3d 177 (2011) (contract construction).
Because the contracts must be interpreted within the context of the statutory framework, we begin by examining *1041 the relevant statutory provisions, starting with the sections in the Municipal Employee Relations Act, General Statutes § 7-460 et seq., that address the issue of conflicts between bargaining agreements and statutory provisions. General Statutes § 7-474(f) provides in relevant part: "Where there is a conflict between any agreement reached by a municipal employer and an employee organization and approved in accordance with the provisions of sections 7-467 to 7-477, inclusive, on matters appropriate to collective bargaining, as defined in said sections, and any charter, special act, ordinance, rules or regulations adopted by the municipal employer or its agents ... the terms of such agreement shall prevail...." Similarly, § 7-474(e) provides in relevant part: "The procedure for the making of an agreement between the municipal employer and an employee organization provided by said sections shall be the exclusive method for making a valid agreement for municipal employees represented by an employee organization, and any provisions in any general statute, charter or special act to the contrary shall not apply to such an agreement." (Emphasis added.) Subsections (e) and (f) of § 7-474 must be understood in light of the rule of statutory construction to which we already have alluded, that is, in the absence of an indication to the contrary, bargaining agreements are interpreted in light of existing statutes. Hatcho Corp. v. Della Pietra, supra, 195 Conn. at 21, 485 A.2d 1285; see also Greene v. Waterbury, 126 Conn.App. 746, 751, 12 A.3d 623 (2011) ("Like any other contract, a collective bargaining agreement may incorporate by reference other documents, statutes or ordinances to be included within the terms of its provisions.... When a contract expressly incorporates a statutory enactment by reference, that enactment becomes part of a contract for the indicated purposes just as though the words of that enactment were set out in full in the contract." [Citation omitted; internal quotation marks omitted.]). Given the text of these statutes and the rule of construction together, we must determine whether there is a conflict between § 2761 of the city charter and the pertinent bargaining agreement provisions. If there is a conflict between § 2761 of the city charter and the pertinent bargaining agreement provisions, the terms of the bargaining agreements control and the city is precluded from applying the offset pursuant to the city charter. In the absence of such a conflict, the city charter's offset provision "becomes a part of [the bargaining agreements] and must be read into [them] just as if an express provision to that effect were inserted therein." Hatcho Corp. v. Della Pietra, supra, at 21, 485 A.2d 1285.
The city implemented the offset of the plaintiffs' pensions pursuant to § 2761 of the city charter, which provides: "No payments of retirement, disability or death benefits shall be allowed or paid under the provisions of this act so long or for such period as payments are being made by the [c]ity of Waterbury under the provisions of the General Statutes relating to workers' compensation, except when such payments would exceed the payments made under the provisions of the Workers' Compensation Act. In such cases the pensioner shall receive, in addition to his payments under the Workers' Compensation Act the difference between that amount and the amount which he would receive under the provisions of this act." Put briefly, § 2761 authorizes a reduction in pension payments for whatever amount and during whatever period workers' compensation benefits are being paid. If the workers' compensation benefits exceed the pension benefits, § 2761 authorizes a complete offset of the pension benefits. It is undisputed that heart and hypertension benefits pursuant to § 7-433c are treated in the same manner as workers' compensation benefits. O'Connor v. Waterbury, 286 Conn. 732, *1042 752-53, 945 A.2d 936 (2008). Accordingly, there also is no dispute that the charter's offset provision applies to heart and hypertension benefits, when applicable.
We turn next to the collective bargaining agreements. We begin with the 1979 to 1982 collective bargaining agreement between the city and the police union (1979 police union agreement), pursuant to which Acas is entitled to spousal pension benefits. Article XXIII of the 1979 police union agreement, which governs pension benefits, is replete with references to the city charter. For example, article XXIII, § 1, provides that nothing in that agreement shall be interpreted to limit or derogate any rights that the employees have pursuant to the city charter. The agreement references the city charter as a source of some definitions; art. XXIII, § 2(1), (3) and (4), of the 1979 police union agreement; and as a reference for computing years of service for purposes of eligibility to exceed the maximum pension benefit. Id., at § 9. Even more significant is the reference to the city charter in article XXIII, § 13, of the 1979 police union agreement, which expressly identifies the extent to which a particular charter provision does not apply. Specifically, article XXIII, § 13, which sets forth pension benefits for surviving children, incorporates § 2745 of the Waterbury city charter, but then identifies two exceptions to the city charter provision's application.[10] The frequency of references to the city charter, particularly those references in which the parties clearly exhibit their awareness of their power to use the city charter precisely to the extent that fits their needs and no more, suggests that if the parties had intended to preclude application of the city charter, they would have done so expressly, as they did in § 13.
The operative provision entitling Acas to pension benefits, article XXIII, § 12, of the 1979 police union agreement, provides in relevant part: "A spouse of an employee shall be entitled to a `[s]pouse [p]ension' in the amount hereinafter set forth in this [§] 12, upon the death of the employee (or a former employee, who, at the time of death, was a retiree) which death occurred per the circumstances and per the formula of said [§] 2745 of the said [c]harter." (Emphasis added.) Article XXIII, § 12(A) further provides that "the spouse of said deceased employee shall be entitled to receive a [s]pouse [p]ension in an amount equal to one-half ... of the annual pay[11] which said deceased employee was entitled to receive at the time of his or her death; the spouse of a deceased retiree shall be entitled to receive a [s]pouse [p]ension in an amount equal to one-half ... of the annual pay which such deceased retiree was entitled to receive as of the date of his or her application for a service or disability pension." (Emphasis added.) Other pension formula provisions in article XXIII use similar mandatory language in defining the applicable formulas pursuant to which the beneficiary is to receive a pension. See, e.g., id., at § 7 (setting forth formula for service pension and stating that "an employee's pension ... shall be *1043 based upon [2 percent] for each year of service" [emphasis added]); id., at § 14 (setting forth formula for disability pension and stating that "[t]he [city] guarantees that no pension payable to a police participant employed by the [p]olice [d]epartment on account of total and permanent disability sustained during the performance of essential duties pertaining to employment by the [city] as provided herein, shall be less than one-half ... the annual rate of regular compensation, plus longevity, received by the disabled employee at the time of disability"[12] [emphasis added]).
The question is whether, as the plaintiffs contend, application of the city charter's offset conflicts with the mandatory language of the pension formula provisions because the offset's application necessarily reduces the guaranteed pension amount, or whether, as the defendants contend, there is no conflict because the two provisions serve different purposes. We agree with the defendants. First, as we have observed, the plaintiffs' position is belied by the frequency with which the drafters of the bargaining agreements referenced the city charter and excepted certain charter provisions from applying to the bargaining agreements. Second, and more significantly, the spousal pension formula provision in the city charter, which predated the 1979 bargaining agreement, clearly demonstrates that the offset and the pension provisions are intended to apply together.
Section 2745 of the city charter sets forth the pension benefits of surviving spouses and dependents. With respect to surviving spouses, the city charter uses mandatory language setting forth the pension formula provisions in the city charter that is virtually identical to the language in the bargaining agreements on which the plaintiffs rely.[13] Yet, § 2745 is part of the *1044 city charter, along with the pension offset provision, § 2761. It is a basic tenet of statutory construction that "statutes should be construed, where possible, so as to create a rational, coherent and consistent body of law." (Internal quotation marks omitted.) Aspetuck Valley Country Club, Inc. v. Weston, 292 Conn. 817, 829, 975 A.2d 1241 (2009). Reading the two city charter provisions together as a coherent whole, the only reasonable interpretation of the mandatory language in § 2745 is that, although it mandates the particular pension formula set forth in that provision, it does not preclude an offset of the pension if the beneficiary is receiving benefits that trigger the application of § 2761.
A comparison of the pension formula provision in the bargaining agreement with the pension formula set forth in § 2745 of the city charter further demonstrates that there is no conflict between the bargaining agreement and the charter offset provision. Specifically, article XXIII, § 12, of the 1979 police union agreement provides a more generous pension formula than had been provided under the preexisting charter.[14] The new, more favorable formula thus directly conflicts with the charter provision. Because § 2745 of the charter conflicts with article XXIII, § 12, of the 1979 police union agreement, § 7-474(e) and (f) require that the bargaining agreement controls the manner in which the pension must be calculated. There is, however, no conflict between article XXIII, § 12, of the 1979 police union agreement and § 2761 of the city charter. Just as the mandatory language in § 2745 of the charter is reconcilable with the charter offset provision, the mandatory language in article XXIII, § 12, of the 1979 police union agreement is also readily reconciled with § 2761. The bargaining agreement controls the amount of the pension, but the charter determines if that pension is subject to an offset.
The two subsequent agreements between the city and the police union, pursuant to which Paul Salvatore and Coyle were entitled to benefits, contain substantially similar language to that employed in the 1979 police union agreement and yield the same conclusion. See art. XXIII of 1984 to 1986 bargaining agreement between the city and the police union (1984 police union agreement); and art. XXIII of 2000 to 2005 bargaining agreement between the city and the police union (2000 police union agreement). Notably, both the 1984 police union agreement and the 2000 police union agreement contain the mandatory language relied upon by the plaintiffs, including the language in which the city guarantees that no disability pension payable shall be less than the amount specified in the contract. Art. XXIII, § 14, of the 1984 police union agreement; art. XXIII, § 12, of the 2000 police union agreement. Just as in the 1979 police union agreement, the preexisting charter contained this same "guarantee" language. Additionally, the particular provisions pursuant to which Paul Salvatore and Coyle were entitled to benefits, when compared to the corresponding provisions *1045 of the city charter, demonstrate that the bargaining agreements substituted pension formulas that were more favorable to beneficiaries, conflicting with, and therefore superseding, the applicable charter provisions.[15] Just as we did with regard to the 1979 police union agreement, we read the mandatory language in the 1984 and 2000 police union agreements to guarantee the application of the particular pension formulas set forth in the applicable provisions, rather than to preclude the application of an offset.
Similar to the police union bargaining agreements, the 1980 to 1983 bargaining agreement between the firefighters union and the city (1980 firefighters union agreement), pursuant to which Lynch was entitled to a spousal pension, references the city charter frequently and also expressly indicates the circumstances in which specified provisions of the city charter do not govern. The 1980 firefighters union agreement contains mandatory language in its pension formula provisions similar to the language utilized in the 1979 police union agreement. Like the spousal benefits provision in the 1979 police union agreement, article XXXIII, § 6, of the 1980 firefighters union agreement modifies and supersedes § 2745 of the city charter, the provision governing spousal benefits, by incorporating longevity payments into the definition of "`annual pay.'" Article XXXIII, § 6, of the 1980 firefighters union agreement expressly acknowledges the alteration, stating that the formula set forth in the bargaining agreement will apply regardless of "[a]nything in [§] 2745 of the [c]harter of the [city] to the contrary...." Section 7 of article XXXIII of the 1980 firefighters union agreement, which governs the pension benefits of surviving children, includes similar language to that employed in the 1979 police agreement, namely, that the provisions of § 2745 of the city charter "shall remain in full force and effect except the dollar amount to be paid to the legally appointed guardian of any surviving child or children of any such deceased employee shall be determined by application of the formula in [§] 6 of this [a]rticle [XXXIII]."
The 1980 firefighters union agreement contains mandatory language in its pension formula provisions that is similar to the language in the 1979 police union agreement.[16] For the reasons we already have *1046 set forth in this opinion, we conclude that the mandatory language in the applicable provisions guarantees the application of the specific pension formula, but does not preclude the application of the pension offset.
In summary, a comparison of the pension formula provisions in the bargaining agreements with those in the preexisting city charter reveals that the charter uses the same mandatory language to characterize the pension formulas, language that, when read consistently with § 2761 of the city charter, cannot reasonably be interpreted to preclude a pension offset. Instead, a comparison of these provisions reveals that the bargaining agreements simply superseded the city charter's pension formula provisions by providing more favorable formulas. Nothing in the language of the bargaining agreements precludes the application of the offset provision. Indeed, such a conclusion is consistent with the Appellate Court's recognition that "[t]he purpose of... § 7-433c is to protect against a wage loss, not to give some firemen and policemen a double recovery for the same wage loss." Middletown v. Local Union No. 1073, 1 Conn.App. 58, 63, 467 A.2d 1258 (1983), cert. dismissed, 192 Conn. 803, 471 A.2d 244 (1984).
The plaintiffs' arguments in support of the trial court's interpretation of the bargaining agreements are not persuasive. First, the plaintiffs rely on a provision in the firefighters union collective bargaining agreements, which expressly mentions an offset, to argue that the absence of similar, express language acknowledging the possibility of an offset in the other provisions of all five bargaining agreements demonstrates that no offset was allowed in those instances. We conclude that the provision on which the plaintiffs rely actually supports our conclusion.
Article XXXIII, § 12, of the 1980 firefighters union agreement, and article XXXIII, § 12, of the 1983 to 1986 collective bargaining agreement between the city and the firefighters union (1983 firefighters union agreement) both set a cap for disability pensions at 76 percent of annual pay. In light of that cap, § 12 in both agreements also provides that "the [c]ity may, if it so elects and it is necessary to do so because of the 76 [percent] maximum prescribed herein, utilize as an offsetting credit, the amount of the appropriate reduction in the dollars prescribed by [§] 2746 of the [city] [c]harter as against any dollars required to be paid per the [workers' compensation or heart and hypertension statutes], (if [those] provisions... are applicable to the disability pension applications in question ...). The parties agree that the provisions of this [s]ection shall not apply to, and shall not require a reduction of, any specific injury award, if applicable...."
Contrary to the plaintiffs' construction, § 12 of the 1980 and 1983 firefighters union agreements does not permit an offset that otherwise is prohibited. Instead, that section limits the city's ability to offset a disability pension pursuant to § 2761 of the city charter. That is, the city's power to implement an offset pursuant to § 2761 is limited under § 12 to those instances in which the combined pension and heart and hypertension benefits exceed 76 percent of *1047 the disability pensioner's annual pay. Thus, if the retiree received heart and hypertension benefits that, taken together with the pension benefits, resulted in the retiree receiving combined benefits totaling 75 percent of his annual pay, under § 12 of the 1980 and 1983 firefighters union agreements, the city would not have authority to offset the retiree's pension by the amount of heart and hypertension benefits. In the absence of that provision, however, § 2761 of the city charter would have authorized an offset of the amount of the heart and hypertension benefits. The specific limitation set forth in § 12 of the two firefighters union agreements conflicts with the charter's absence of such a limitin this instance, § 7-474 requires that the provision of the bargaining agreements must prevail. The fact that the parties opted in this instance to impose a limit on the city's power to implement the offset provides further evidence of their awareness that the bargaining agreements were subject to the city charter provisions and that they had the power to modify the city charter provisions in the bargaining agreements if that was their intention.
The plaintiffs also contend that the city is precluded from applying § 2761 because the provision was repealed before the city attempted to implement the offset.[17] The plaintiffs' argument, however, overlooks the rule that a contract must be interpreted in light of the laws that existed at the time the parties entered into the agreement. Hatcho Corp. v. Della Pietra, supra, 195 Conn. at 21, 485 A.2d 1285. The 1967 city charter was in effect at the time that the parties entered into each of the bargaining agreements, and was incorporated expressly into each of the bargaining agreements. Any subsequent amendment to the charter, accordingly, is irrelevant to the issues in this appeal because the 1967 charter is applicable to the bargaining agreements.
Also unpersuasive is the plaintiffs' argument that the historical practice provisions of the bargaining agreements preclude the city from applying § 2761 of the city charter. Specifically, the plaintiffs rely on article XVIII, § 2, of the police union bargaining agreements and article XXXII, § 1, of the firefighters union bargaining agreements, each of which protects benefits and rights previously enjoyed. The plaintiffs contend that, because the city failed for years to offset the plaintiffs' pensions by their heart and hypertension benefits, the historical practice provisions of the bargaining agreements preclude the city from doing so now.
Article XVIII, § 2, of the 1979 police union agreement provides in relevant part: "The signing of this [a]greement shall not abridge any employee rights or privileges to which he is entitled by ... historical practice unless such right or privilege is specifically covered by one or more terms of this [a]greement." (Emphasis added.) The pertinent language in article XVIII, § 2, of the 1984 police union agreement and article XVIII, § 2, of the 2000 police union agreement is identical. Article XXXII, § 1, of the 1980 firefighters union agreement and article XXXII, § 11, of the 1983 firefighters union agreement both *1048 provide: "All privileges, benefits and rights heretofore enjoyed by employees in this bargaining unit which are not specifically relinquished, provided for, or abridged in this [a]greement are hereby protected by this [a]greement." (Emphasis added.) The emphasized language in each of the historical practice provisions illustrates the failure of the plaintiffs' argument. The historical practice provisions expressly do not apply rights or privileges that are addressed by the agreements. As we have explained, all five of the agreements, either directly or indirectly by incorporating the city charter, address the issue of pension offset. Accordingly, the historical practice provisions of the bargaining agreements are inapplicable.
In sum, we conclude that the city charter's offset does not conflict with the provisions in the collective bargaining agreements governing the pensions provided to Acas, Paul Salvatore, Coyle and Lynch. Therefore, the trial court improperly concluded that the defendants had breached those agreements.

II
We next consider the defendants' claim that, although the trial court properly interpreted the language in Russo's bargaining agreement to permit an offset only to the extent that Russo's combined pension and heart and hypertension benefits exceed the cap set forth in the agreement, that court improperly found that the defendants had breached the agreement. Specifically, the defendants contend that the trial court improperly assumed that application of the offset reduced Russo's benefits below the cap without determining whether Russo's combined benefits in fact exceeded the cap set forth in the agreement, thus precluding an offset. We agree.
As we have explained in part I of this opinion, the 1983 firefighters union agreement, pursuant to which Russo was awarded a disability pension, specifically acknowledges the city's power to implement an offset, but limits that authority to circumstances in which the total combined pension and heart and hypertension benefits exceed the 76 percent cap set forth in the bargaining agreement. Art. XXXIII, § 12, of the 1983 firefighters union agreement. The trial court correctly concluded that "Russo's disability pension could only have been offset if his combined disability pension and heart and hypertension payments exceeded 76 percent of his `annual pay.'" The court, however, made no finding regarding Russo's annual pay, and no finding regarding whether Russo's combined benefits of pension and heart and hypertension payments exceeded 76 percent of that amount. Therefore, we reverse the judgment of the trial court with regard to Russo and remand the case to that court for a new trial with regard to such findings.

III
Finally, we address the cross appellants' claim that the trial court improperly dismissed Russo's equitable estoppel claim as moot. Additionally, the cross appellants contend that, in the event that this court reverses the judgment of the trial court as to the plaintiffs' breach of contract claims, the case should be remanded to the trial court for a new trial on their estoppel claim, which the trial court never addressed. We disagree. Because none of the cross appellants offered evidence at trial to establish that he or she had changed his or her position in reliance on the city's failure to apply the offset pursuant to § 2761 of the city charter, all of them failed to meet their burden to establish the elements of equitable estoppel. Accordingly, we conclude that a new trial is not warranted and affirm the judgment of the trial court with respect to Russo's equitable estoppel claim.
*1049 "There are two essential elements to an estoppelthe party must do or say something that is intended or calculated to induce another to believe in the existence of certain facts and to act upon that belief; and the other party, influenced thereby, must actually change his position or do some act to his injury which he otherwise would not have done.... [I]n order for a court to invoke municipal estoppel, the aggrieved party must establish that: (1) an authorized agent of the municipality had done or said something calculated or intended to induce the party to believe that certain facts existed and to act on that belief; (2) the party had exercised due diligence to ascertain the truth and not only lacked knowledge of the true state of things, but also had no convenient means of acquiring that knowledge; (3) the party had changed its position in reliance on those facts; and (4) the party would be subjected to a substantial loss if the municipality were permitted to negate the acts of its agents." (Citation omitted; internal quotation marks omitted.) O'Connor v. Waterbury, supra, 286 Conn. at 757-58, 945 A.2d 936. "The party claiming estoppel ... has the burden of proof." (Internal quotation marks omitted.) Id., at 758, 945 A.2d 936.
Although the cross appellants testified as to the negative consequences they had suffered because of their reduced income as a result of the pension offset, none of them testified that he or she had acted in detrimental reliance on the city's failure to implement the offset in the years prior to its decision to apply § 2761 of the city charter. For example, Russo testified that, subsequent to the pension offset, he had to change his budgeting decisions, forgoing a trip to Italy, sacrificing trips to the casino and making more economic choices about dining and entertainment. He also testified that he had experienced stress as a result of the difficulty of meeting expenses with the reduced income. He did not, however, testify that he would have behaved differently had he known from the beginning that his pension was subject to offsetthat is, Russo did not testify that he would have retired later, or that he would have made different investment decisions, or did not offer any other testimony to demonstrate that he acted in detrimental reliance on the extra income that he was receiving or anticipated receiving during the time that the city failed to implement the offset to his pension. Similarly, the other cross appellants testified as to the negative effect they experienced due to their reduced income following the implementation of the offset, but did not offer any evidence that they had acted in detrimental reliance on the city's prior failure to implement the offset.[18]
*1050 The question of whether the cross appellants met their burden to establish the elements of estoppel is a question of fact. Middlesex Mutual Assurance Co. v. Walsh, 218 Conn. 681, 699, 590 A.2d 957 (1991). Under ordinary circumstances, a remand would be required. "There are times [however] ... when the undisputed facts or uncontroverted evidence and testimony in the record make a factual conclusion inevitable so that a remand to the trial court for a determination would be unnecessary." (Internal quotation marks omitted.) Allstate Ins. Co. v. Palumbo, 296 Conn. 253, 268, 994 A.2d 174 (2010). In the present case, a remand would be pointless, because none of the cross appellants offered any evidence to demonstrate detrimental reliance on the city's failure to offset their pension benefits. In such a case, the trial court could reach only one conclusion: that the estoppel claims fail. Accordingly, a remand is not necessary, because the cross appellants have failed to sustain their burden of establishing a necessary element of equitable estoppel.
The judgment is reversed in part and the case is remanded to the trial court with direction to render judgment in favor of the defendants on all claims except for Russo's claim for breach of contract; the case is remanded for a new trial on that claim. The judgment is affirmed with respect to the claim of equitable estoppel.
In this opinion the other justices concurred.
NOTES
[1] Jason Chicano, originally a plaintiff in this action, is not a party to this appeal. All of his claims have been either stricken, withdrawn or dismissed. Nicholas Russo died while his cross appeal was pending, and, thereafter, this court granted the motion to substitute Richard M. Russo, the executor of Nicholas Russo's estate, as a party plaintiff in the action. As we explain; see footnote 3 of this opinion; Paul Salvatore died before judgment was rendered in the trial court, and his substitute plaintiff is not participating in the other plaintiffs' cross appeal.
[2] The defendants appealed from the judgment of the trial court to the Appellate Court, and Russo, Coyle, Lynch and Acas cross appealed. We transferred the appeal and cross appeal, SC 18392, to this court pursuant to General Statutes § 51-199(c) and Practice Book § 65-1.
[3] Although the trial court rendered judgment in favor of Paul Salvatore, he had died before judgment was entered. Following the defendants' appeal, they filed a motion in this court to vacate the judgment as to Paul Salvatore, which this court granted without prejudice to the right of the executrix of his estate to reopen the judgment and to be substituted for the decedent. Terese Salvatore then so moved in the trial court, which granted the motion and rendered judgment in favor of Terese Salvatore as substitute plaintiff.

The defendants appealed from that judgment to the Appellate Court. We transferred that appeal to this court pursuant to Practice Book § 65-2 (SC 18588), and consolidated it, for the record and oral argument, with the initial appeal and cross appeal (SC 18392). Terese Salvatore did not file a cross appeal, but the plaintiffs' appellate brief asserts that she is "joining" the claims advanced in the cross appeal, and a letter from her counsel has advised this court that she is adopting the brief in SC 18392 as her appellee brief in SC 18588. The defendants argue that Terese Salvatore is precluded from challenging the judgment of the trial court because of her failure to file a cross appeal. Because the cross appellants have not prevailed on their claims in this appeal, the question of whether Terese Salvatore may join the cross appeal and adopt the arguments therein is rendered moot and we do not address it.
[4] Section 2761 of the city charter provides: "No payments of retirement, disability or death benefits shall be allowed or paid under the provisions of this act so long or for such period as payments are being made by the city of Waterbury under the provisions of the General Statutes relating to workers' compensation except when such payments would exceed the payments made under the provisions of the Workers' Compensation Act. In such cases the pensioner shall receive, in addition to his payments under the Workers' Compensation Act the difference between that amount and the amount which he would have received under the provisions of this act."
[5] The defendants also claim, as to Paul Salvatore, that, even under the trial court's improper construction of the bargaining agreement applicable to him, the offset was permissible because that offset did not reduce his pension payments below the minimum set forth in his bargaining agreement. Because we agree with the defendants that the trial court improperly concluded that the charter offset provision could not be applied, we do not address this claim.
[6] The cross appellants advance a number of claims that we do not address. We briefly summarize those claims and the reasons we do not reach them.

The cross appellants claim that, in light of the trial court's determination that they are entitled to their pension without any offset, that court improperly concluded that the defendants had not deprived them of a federally protected property interest in violation of their right to procedural due process when applying the offset on the ground that they did not have a constitutionally protected interest in their pension payments. The defendants respond, inter alia, that the plaintiffs' claim is based on a contractual right to receive a certain amount of benefits in excess of what would be allowed if § 2761 applied to the bargaining agreements and that a contract right does not give rise to a constitutionally protected property interest. Because we conclude that the city properly could apply § 2761 of the city charter to offset the plaintiffs' pensions, however, the question of whether the plaintiffs had a constitutionally protected property interest in the amount of their pension that was offset is moot.
The cross appellants also claim that the trial court's decision failed to protect from offset certain payments to which they are entitled in addition to the minimum amounts established by their bargaining agreements. Specifically, the cross appellants claim that the trial court's decision did not account for: the more favorable pension formula for disability pensions; cost of living increases; and other awards in excess of the contractual minimum. Because we conclude that the trial court improperly interpreted the bargaining agreements to establish a minimum guaranteed pension payment, we do not address these claims. For the same reason, it is unnecessary for us to address the cross appellants' claim that the trial court improperly failed to award them interest.
Finally, we decline to review either the cross appellants' claim that the trial court improperly dismissed the plaintiffs' administrative appeal from the retirement board's decision to apply the offset or their request for a remand to the trial court for findings of fact as to the meaning of the agreements in light of extrinsic evidence. Both claims are inadequately briefed.
[7] Coyle originally received permanent partial heart and hypertension benefits. In June, 2005, he began receiving total temporary heart and hypertension benefits, and his award increased to $678 per week. In July, 2006, he resumed receiving permanent partial heart and hypertension benefits. The trial court made no finding as to the amount of his benefits upon the resumption of his permanent partial heart and hypertension benefits.
[8] The trial court did not make findings regarding either the amount that Coyle received in pension benefits or the amount of the offset.
[9] Terese Salvatore also asserted a claim for infliction of emotional distress, which the trial court rejected.
[10] Article XXIII, § 13, of the 1979 police union agreement provides the following exceptions: "Except the dollar amount to be paid to the legally appointed guardian of any surviving child or children of any such deceased employee shall be determined by application of the formula in [§] 12 of this [a]rticle XXIII and except that the provision in [§] 2745 of the [c]harter concerning five ... years of service with the [police] [d]epartment shall be reduced to a requirement of only two years of service with the [police] [d]epartment."
[11] Article XXIII, § 12, of the 1979 police union agreement defines "`annual pay'" as "the employee's annual base salary as of the date of death (or as of date of application for a pension) ... plus the longevity payment for the year in which the employee dies (or applies for pension). ..."
[12] In O'Connor v. Waterbury, supra, 286 Conn. at 745-46, 945 A.2d 936, this court stated, when construing this "guarantee" provision and rejecting a claim that a disability retirement amount under this provision should exceed the amount provided for service retirement under another provision: "We conclude that the language in article twenty-three, § 12, of the agreement clearly and unambiguously provides that the board was prohibited only from awarding a disability pension less than 50 percent of an applicant's annual compensation. Thus, a pension award under § 12 may, but is not required to, exceed 50 percent of an applicant's annual compensation. In addition, while article twenty-three, § 4, of the agreement provides a clear formula that the board was required to utilize when determining the amount of a service pension, the provisions of § 12 do not contain such a formula. Accordingly, we conclude that § 12 of the agreement gave the board broad discretion in deciding the specific amount of a disability pension, so long as the pension constituted at least 50 percent of an applicant's annual compensation." (Emphasis altered.)
[13] Section 2745 of the city charter provides in relevant part: "The spouse or other dependent as hereinafter provided of any police or fire participant who has been in service in either department for at least five years and who dies from any cause shall be entitled to a pension in accordance with and subject to the provisions of this section. If it is shown to the satisfaction of the retirement board that such fire or police participant was either killed in the actual performance of duties in his department or has died from the proximate effects of any injury received or exposure experienced while in the active discharge of his duties, the spouse of such participant shall receive a pension in accordance with and subject to the provisions of this section until death or remarriage. Said pension shall be equal to one-half of the pension to which such deceased participant would have been entitled at the time of death or one-quarter of the annual pay of such deceased participant at the time of death, whichever is greater. Upon the death of any retired police or fire participant, the spouse of such member shall receive a pension equal to one-half of the pension received by such participant. ..." (Emphasis added.)
[14] Section 2745 of the city charter entitles a spouse to "one-half of the pension to which such deceased participant would have been entitled at the time of death or one-quarter of the annual pay of such deceased participant at the time of death, whichever is greater." Article XXIII, § 12(A), of the 1979 police union agreement, by comparison, entitles a spouse to "one-half ... of the annual pay which said deceased employee was entitled to receive at the time of his or her death; the spouse of a deceased retiree shall be entitled to receive a [s]pouse [p]ension in an amount equal to one-half ... of the annual pay which such deceased retiree was entitled to receive as of the date of his or her application for a service or disability pension." Article XXIII, § 12, defines "`annual pay'" to include longevity, representing a more favorable formula for spouses.
[15] Paul Salvatore, who was awarded a disability pension pursuant to article XXIII, § 14, of the 1984 police union agreement, was entitled under that section to receive a pension that was not less than "one-half ... the annual rate of regular compensation, plus longevity, received by the disabled employee at the time of disability." Under the applicable provision of the city charter, § 2746, he would simply have been entitled to "one-half the annual rate of regular compensation received by the disabled employee at the time of disability." Again, the more favorable formula in the bargaining agreement, which includes longevity as part of annual pay, prevails. Similarly, Coyle, who was awarded a service pension pursuant to article XXIII, § 4, of the 2000 police union agreement, was entitled to receive a pension "in an amount equal to one-half of the amount of compensation... received by him, at the permanent rank or grade held by him at the time of his retirement, payable monthly." "`Compensation'" is defined in article XXIII, § 2(6), of the 2000 police union agreement to include annual pay plus longevity. For additional years of service after the date of eligibility for retirement, article XXIII, § 4, of the 2000 police union agreement adds "a sum equal to [2.5 percent] percent of his said compensation, for each additional year he continues in said service until the date of his permanent retirement." The formula for additional years of service is more generous than that set forth in the applicable charter provision, § 2742, which allows only 1.66 percent for each additional year of service.
[16] Article XXXIII, § 6, of the 1980 firefighters union agreement, the provision pursuant to which Lynch was entitled to benefits, provides that the spouse of a deceased retiree or employee "shall be entitled to receive a spouse pension in an amount equal to one-half of the annual pay" that the employee or retiree was entitled to receive at the time of death or at the date of application for a pension, respectively. (Emphasis added.) Section 9 of article XXXIII of the 1980 firefighters union agreement provides that the employee's pension "shall be based upon [2 percent] for each year of service...." (Emphasis added.)
[17] The plaintiffs rely on an ordinance adopted by the city in 2003, which replaced the portions of the charter dealing with pension and retirement, including § 2761 of the city charter. The new provision, § 35.22 of the final amended ordinance regarding the pension and retirement system, has the same effect as § 2761, and provides: "To the extent that a pensioner is entitled to any pension benefits from the retirement system, while such benefits are payable to such pensioner they shall be reduced by any amounts attributable to workers' compensation and/or heart and hypertension benefits paid under any relevant state of Connecticut or local statutes or ordinances." All of the bargaining agreements, however, predate this change.
[18] For example, far from testifying that her husband timed his retirement in reliance on the nonoffset income, Acas testified that her husband retired following a heart attack because his health forced him to do so. She testified that she calculated her monthly budget based on the amount of both her pension benefits and her heart and hypertension benefits, but did not state that she would have saved or invested money differently had she known that her widow's pension might be subject to offset. In support of her estoppel claim, she merely testified that she was unable to add a new deck to her home and make repairs on the home because of her reduced income following the implementation of the offset. Lynch also testified that her husband had retired at the time that he did for health reasons. She testified that she calculated her monthly budget on the basis of her combined income from pension and heart and hypertension benefits, but did not testify that she would have saved or invested more or differently had she known that her pension could be offset. She testified as to the effect of her reduced income, stating that she had decided to forgo some planned updates to her home and was no longer contributing to the costs for the care of two of her grandchildren. She did not testify, however, that she or her husband had in any way acted in detrimental reliance on the city's failure to apply the offset. Similarly, Coyle did not testify that he relied to his detriment on the additional income and he was not asked how the reduced income following the implementation of the offset had affected him.

With respect to Terese Salvatore, we observe that, even if she were allowed to join the cross appeal; see footnote 3 of this opinion; she would not be entitled to a remand on the issue of estoppel. Paul Salvatore testified that he timed his retirement based on his health. He also testified as to the effect that the reduced income had on his standard of living, but did not testify that he acted in reliance on the nonoffset income to his detriment.