### KEVIN GREENE *v.* CITY OF WATERBURY ET AL. (AC 31469)

Gruendel, Robinson and Pellegrino, Js.

interest that the defendant's action has invaded." [Citations omitted; internal quotation marks omitted.]).

Argued November 15, 2010—officially released February 22, 2011

*Francis J. Grady*, with whom was *Richard O. LaBrecque*, for the appellant (plaintiff).

*Paula N. Anthony*, assistant corporation counsel, for the appellees (defendants).

*Opinion*

ROBINSON, J. The plaintiff, Kevin Greene, a former firefighter for the defendant city of Waterbury (city), appeals from the judgment of the trial court denying his appeal from the decision of the defendant retirement board of the city (board), which denied his request to resubmit an application for disability retirement and pension benefits (disability pension application). On appeal, the plaintiff claims that the court improperly denied his appeal from the decision of the board because the board acted arbitrarily, illegally and in abuse of its discretion in denying his request to resubmit his disability pension application.[1] We disagree and, accordingly, affirm the judgment of the trial court.

---

[1] In his brief, the plaintiff alleges three separate claims of error. After careful review, we conclude that all three claims primarily focus on the central issue of whether the board acted arbitrarily, illegally or in abuse of its discretion. To the extent that the plaintiff may have made any arguments directed at any other claims, we conclude that such claims are briefed

The record reveals the following relevant factual and procedural history. At all times relevant to this appeal, the plaintiff was subject to the terms and conditions of the collective bargaining agreement between the city and Local 1339 of the International Association of Fire Fighters, AFL-CIO (bargaining agreement). The bargaining agreement provided, in relevant part, that the provisions of the city's pension ordinance (ordinance) would control the award of retirement and pension benefits.[2]

The plaintiff was hired by the city as a firefighter in September, 1999. On June 1, 2006, the plaintiff submitted a disability pension application to the board, claiming that he had suffered a work-related shoulder injury on January 2, 2004, and work-related back injuries on May 28 and December 17, 2005. Pursuant to the ordinance, the city's human resources department scheduled the plaintiff for two independent medical examinations on June 20 and July 11, 2006, for the purpose of determining the extent of his injuries. The plaintiff attended the examinations as requested.[3]

On August 7, 2006, the plaintiff voluntarily resigned from his position as a firefighter with the city and withdrew his disability pension application. On the same

inadequately and decline to consider them. See *Merchant* v. *State Ethics Commission*, 53 Conn. App. 808, 818, 733 A.2d 287 ("We are not required to review issues that have been improperly presented to this court through an inadequate brief. . . . Analysis, rather than mere abstract assertion, is required in order to avoid abandoning an issue by failure to brief the issue properly." [Internal quotation marks omitted.]).

[2] Section 1 of article XXXIII of the bargaining agreement provides in relevant part: "Employees shall be entitled to retirement and survivor benefits pursuant to the terms and conditions of the ordinance entitled Final Amended Ordinance Regarding the Pension and Retirement System, Part II: Pensions and Retirement Provisions, and passed by the Board of [Aldermen] on November 10, 2003."

[3] The reports from the independent medical examinations revealed that the plaintiff was unable to perform full firefighter duties as a result of his injuries. The record is not clear as to whether the results of the independent medical examinations were available prior to August 7, 2006.

day, the plaintiff also submitted a "participant contribution withdrawal form" to the city's human resources department and asked to withdraw his contributions from the city's pension and retirement fund. On September 12, 2006, counsel for the plaintiff submitted a letter to the board, requesting that it reinstate the plaintiff's disability pension application and that the plaintiff's request to withdraw his contributions from the city's pension and retirement fund be withdrawn. On October 12, 2006, the board unanimously denied his request to resubmit his disability pension application and notified the plaintiff of its denial by letter dated October 13, 2006.

The plaintiff appealed to the trial court from the decision of the board, claiming that the board had acted illegally, arbitrarily and in abuse of its discretion in denying his request to resubmit his disability pension application. After reviewing the requirements of the ordinance, the court concluded that the plaintiff did not meet his burden of proof to show that the board acted illegally, arbitrarily, or in abuse of its discretion because he did not meet the requirements set forth in the ordinance for awarding a disability pension when he submitted his request on September 12, 2006. Subsequently, the plaintiff appealed to this court.

We begin by setting forth the applicable standard of review. "The board was created by . . . the Waterbury city code, and . . . the Waterbury city code grants the board powers and duties similar to that of an administrative agency. Accordingly, we review the actions of the board under the . . . standard[s] that [govern] review of an administrative agency's actions." *O'Connor* v. *Waterbury*, 286 Conn. 732, 740–41, 945 A.2d 936 (2008).

"Judicial review of an [administrative] agency decision is limited. . . . [W]e must decide, in view of all of the evidence, whether the [administrative] agency,

in issuing its order, acted unreasonably, arbitrarily or illegally, or abused its discretion. . . . Conclusions of law reached by the administrative agency must stand if the court determines that they resulted from a correct application of the law to the facts found and could reasonably and logically follow from such facts." (Internal quotation marks omitted.) *Alexander* v. *Retirement Board*, 57 Conn. App. 751, 757–58, 750 A.2d 1139, cert. denied, 254 Conn. 902, 755 A.2d 217 (2000). "It is fundamental that a plaintiff has the burden of proving that the [municipal board], on the facts before [it], acted contrary to law and in abuse of [its] discretion . . . . The law is also well established that if the decision of the [municipal board] is reasonably supported by the evidence it must be sustained." (Internal quotation marks omitted.) *O'Connor* v. *Waterbury*, supra, 286 Conn. 741–42.

"Where the administrative agency has made a factual determination, the scope of review ordinarily is expressed in such terms as substantial evidence or sufficient evidence. . . . Where, however, the administrative agency has made a legal determination, the scope of review ordinarily is plenary." (Internal quotation marks omitted.) *Alexander* v. *Retirement Board*, supra, 57 Conn. App. 757–58.

The plaintiff claims that the court improperly denied his appeal from the decision of the board because the board acted arbitrarily, illegally and in abuse of its discretion in denying his request to resubmit his disability pension application. Specifically, the plaintiff claims that the board acted arbitrarily in denying his request because he had satisfied all of the ordinance's requirements, as incorporated into the bargaining agreement, for awarding a disability pension. We disagree.

Resolution of the plaintiff's claim involves interpretation of the bargaining agreement and the ordinance

as incorporated into the bargaining agreement. "It is axiomatic that a collective bargaining agreement is a contract." *D'Agostino* v. *Housing Authority*, 95 Conn. App. 834, 838, 898 A.2d 228, cert. denied, 280 Conn. 905, 907 A.2d 88 (2006); see also *O'Connor* v. *Waterbury*, supra, 286 Conn. 744–49 (interpreting collective bargaining agreement under contract law principles). Like any other contract, a collective bargaining agreement may incorporate by reference other documents, statutes or ordinances to be included within the terms of its provisions. See 20 S. Williston, Contracts (4th Ed. Lord 2001) § 55:24, pp. 99–100. "When a contract expressly incorporates a statutory enactment by reference, that enactment becomes part of a contract for the indicated purposes *just as though the words of that enactment were set out in full in the contract.*" (Emphasis added.) 11 S. Williston, Contracts (4th Ed. Lord 1999) § 30:19, p. 202; see also *Barton* v. *Bristol*, 291 Conn. 84, 99, 967 A.2d 482 (2009) (noting that municipal ordinance incorporated by reference into collective bargaining agreement was contractual provision). Accordingly, our interpretation of the bargaining agreement, as well as the ordinance incorporated therein, is guided by principles of contract law. See *Prymas* v. *New Britain*, 122 Conn. App. 511, 517, 3 A.3d 86, cert. denied, 298 Conn. 915, 4 A.3d 833 (2010).

"The law governing the construction of contracts is well settled. When a party asserts a claim that challenges the . . . construction of a contract, we must first ascertain whether the relevant language in the agreement is ambiguous. . . . A contract is ambiguous if the intent of the parties is not clear and certain from the language of the contract itself. . . . Accordingly, any ambiguity in a contract must emanate from the language used in the contract rather than from one party's subjective perception of the terms. . . . When

the language of a contract is ambiguous, the determination of the parties' intent is a question of fact . . . . If a contract is unambiguous within its four corners, intent of the parties is a question of law requiring plenary review. . . . Where the language of the contract is clear and unambiguous, the contract is to be given effect according to its terms. A court will not torture words to import ambiguity where the ordinary meaning leaves no room for ambiguity . . . ." (Citation omitted; internal quotation marks omitted.) *O'Connor* v. *Waterbury*, supra, 286 Conn. 743–44.

Pursuant to the bargaining agreement, the terms and conditions of the ordinance govern the award of pensions. Section 35.13 of the ordinance governs the award of disability pensions and, in relevant part, provides: "In the event a [f]irefighter . . . [p]articipant incurs a [w]ork-[r]elated [d]isability, he or she shall be entitled to receive a [p]ension equal to the greater of (i) the [p]articipant's [a]ccrued [b]enefit at the time of such [w]ork-[r]elated disability, or (ii) 50 [percent] of the [p]articipant's [f]inal [a]verage [b]ase [p]ay." The ordinance defines firefighter participants as "firefighters . . . of the [c]ity coming within the provisions of the [r]etirement [s]ystem." A participant is defined as "any person in the service of the [c]ity who is eligible to participate in the [r]etirement [s]ystem . . . and who is actually participating thereunder."

We conclude that the language of the ordinance clearly and unambiguously provides that only a participant is eligible for the awarding of a disability pension. Furthermore, we conclude that to be a participant within the meaning of the ordinance, an individual must satisfy three requirements: (1) be in the service of the city; (2) be eligible to participate in the retirement system; and (3) be actually participating in the retirement system. If an individual does not satisfy any of the three

requirements, he or she may not receive a disability pension pursuant to the ordinance.

Based on a review of the record, we conclude that the board did not act arbitrarily in denying the plaintiff's request to resubmit his disability pension application. It is undisputed that on August 7, 2006, the plaintiff voluntarily resigned from his position with the city and voluntarily submitted a "participant contribution withdrawal form," asking to withdraw his contributions from the city's pension and retirement fund. As a result of his voluntary actions to withdraw from the retirement system, the ordinance required the retirement system to repay to the plaintiff "an amount equal to [his] [c]ontributions to the [r]etirement system . . . ." Therefore, at the time the plaintiff submitted his request for reconsideration on September 12, 2006, he was neither in the service of the city nor "actually participating" in the retirement system. Consequently, the plaintiff was not a participant and, thus, was not eligible to be considered for a disability pension under the provision of the ordinance.

The plaintiff also argues that the board acted arbitrarily because the ordinance contains no provisions addressing the withdrawal of a disability pension application or prohibiting the board from reinstating a previously withdrawn disability pension application. Although this may be true, the plaintiff's argument ignores what the ordinance does require. To receive a disability pension, a firefighter must not only incur a work-related disability, he or she must also be a *participant*. Therefore, if a firefighter who submits an application for disability benefits is not a participant, he or she does not meet the requirements of the ordinance and is not eligible to receive a disability pension. Irrespective of whether the plaintiff submitted a new application or asked the board simply to reinstate his previous application, the plaintiff was not eligible to be

considered for the award of a disability pension when he made his request on September 12, 2006, because he was no longer a participant.

The plaintiff finally argues that the board acted arbitrarily because "the [c]ity regularly retires fire . . . participants on a service pension, and then at a later date, after the employee has been separated from service, considers their applications for disability pensions." We are not persuaded. The plaintiff's argument fails to take into consideration how the facts of the present case differ markedly from the actions he alleges that the city engages in regularly.[4] The current situation does not involve an individual who retired or was retired from service. The plaintiff resigned from his position as a city firefighter and voluntarily withdrew from the retirement system. Even if we were to assume that the plaintiff's actions amounted to retirement, he would still not be eligible for an award of a disability pension under the ordinance because he voluntarily asked to withdraw his contributions from the city's pension and retirement fund.

In summary, we conclude that the trial court was correct in determining that the plaintiff failed to establish that the board acted illegally, arbitrarily or in abuse of its discretion in denying his request to resubmit his disability pension application.

The judgment is affirmed.

In this opinion the other judges concurred.

---

[4] The plaintiff does not provide any examples of specific situations in which the board has engaged in such actions.