******************************************

The "officially released" date that appears near the beginning of an opinion is the date the opinion will be published in the Connecticut Law Journal or the date it is released as a slip opinion. The operative date for the beginning of all time periods for the filing of postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying an opinion that appear in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced or distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************

JOHN M. LALLI, JR., ET AL. *v.*
CITY OF NEW HAVEN
(AC 47153)

Suarez, Clark and Bear, Js.

*Syllabus*

The plaintiffs, all retired police officers who had previously worked for the defendant city, appealed from the trial court's judgment for the defendant on their complaint alleging, inter alia, breach of a collective bargaining agreement between the defendant and a union governing the defendant's police force. On appeal, the plaintiffs, former members of the union, claimed that the court improperly determined that the plaintiffs, as retirees and not active employees, were not entitled to retroactive wages pursuant to the terms of the collective bargaining agreement. *Held*:

The trial court properly determined that the defendant did not breach the terms of the collective bargaining agreement, as the agreement unambiguously provided that, to be eligible for retroactive wages, a member of the union must be an active employee on the date of distribution, and all but one of the plaintiffs had retired prior to the first distribution date.

Argued January 8—officially released February 25, 2025

*Procedural History*

Action to recover damages for, inter alia, breach of contract, and for other relief, brought to the Superior Court in the judicial district of New Haven and tried to the court, *Wilson, J.*; judgment for the defendant, from which the plaintiffs appealed to this court. *Affirmed.*

*William J. Ward*, for the appellants (plaintiffs).

*Claire M. McNamara*, for the appellee (defendant).

*Opinion*

BEAR, J. The plaintiffs, thirty-seven retired New Haven police officers,[1] appeal from the judgment of the

---

[1] The complaint named as plaintiffs John M. Lalli, Jr., Steven Manware, Michael Wuchek, Jeffrey Goodwin, Jason Salgado, Craig Miller, Roy Davis, Huey Young, Darcia Siclari, Elvin Rivera, Elisa Tuzzoli, Douglas Harkins, David Runlett, Elsa Berrios, Hector Valentin, Brian Jackson, Dennis O'Connell, Tammi Means, David Rivera, Mary Helland, Lucille Roach, Brendan Hosey, Curtis Williams, Leslee Witcher, Dietrich Hernandez, Peter McKoy, Garry Monk, Odino Rasile, Michael Torre, Terrence McNeil, John Palmer, Jon Young, Jeffrey Suchy, Steven Teague, Jason Minardi, Michael MastroPetre, and Arpad Tolnay.

trial court rendered in favor of the defendant, the city of New Haven. On appeal, the plaintiffs claim that the court improperly determined that the defendant did not breach the terms of a 2016 collective bargaining agreement by determining that the plaintiffs, as retirees and not active employees, were not entitled to retroactive wages. We disagree and, accordingly, affirm the judgment of the court.

The following facts, as set forth by the court in accordance with the terms of a stipulation of facts between the parties, and procedural history are relevant. "Each of the plaintiffs are former members of the union governing the defendant's police force. The terms of employment were set forth in a collective bargaining agreement [(agreement)] between the defendant and the union. The [agreement] that was in effect on July 1, 2011, expired on June 30, 2016 [(2011 agreement)]. The defendant and the union were unable to negotiate a new [agreement] prior to June 30, 2016. Pursuant to General Statutes § 7-475, the plaintiffs were required to continue to work at the rate of pay detailed in the 2011 [agreement] until a new [agreement] was ratified. Ratification of a new [agreement], effective for the period from July 1, 2016, to June 30, 2022, occurred on September 16, 2019 [(2016 agreement)]. All the plaintiffs retired after June 30, 2016; however, thirty-four of the thirty-seven police officers retired prior to the ratification of the 2016 [agreement]. The three plaintiffs who retired after the ratification of the 2016 [agreement] were Dennis O'Connell, Mary Helland, and Garry Monk. These three plaintiffs retired when the terms and conditions of the ratified 2016 [agreement] were known to them.

"The 2016 [agreement] provides the following language regarding eligibility for retroactive wages: 'In order to be eligible for these payments, members must be an active employee on the date of distribution.' . . .

For the time period from July 1, 2016, to June 30, 2022, the language of the 2016 [agreement] provides for retroactive wage increases as follows: 'A. The wage schedules on June 30, 2016 shall be increased by two and one-quarter (2.25%) percent to be effective and retroactive to July 1, 2016. B. The wage schedules on June 30, 2017 shall be increased by two (2%) percent to be effective and retroactive to July 1, 2017. C. The wage schedules on June 30, 2018 shall be increased by two (2%) [percent] to be effective and retroactive to July 1, 2018. D. Effective July 1, 2019 the wage schedules on June 30, 2019 shall be increased by two and one-quarter (2.25%) percent to be effective and retroactive to July 1, 2019.' . . . The 2016 [agreement] provides for the retroactive wages to be paid as follows: one-third of the retroactive amount to be paid on November 14, 2019, one-third of the retroactive amount to be paid on July 1, 2020, and the final third to be paid in July of 2021.

"The defendant did not make payments on November 14, 2019, to any of the plaintiffs for retroactive wages identified for periods of time they were still employed as police officers for the defendant, with the exception of O'Connell, who did not retire until November 19, 2019, and received a wage increase on November 15, 2019, consistent with the 2016 [agreement]. The defendant also did not pay the plaintiffs for any difference in wages relating to sick leave, time allowed, and vacation payout, which the plaintiffs believe were impacted by the retroactive wage increase as contained in the 2016 [agreement]. The plaintiffs also have not received any increase in pension benefits that they believe were impacted by the retroactive wage increase found within the 2016 [agreement]. Lastly, the parties also stipulated to the definition of 'retroactive' as 'applying to a period prior to enactment.' " (Citations omitted; footnote omitted.)

The plaintiffs filed a complaint alleging, inter alia, breach of contract.[2] The parties entered into a stipulation of facts. In a November 27, 2023 memorandum of decision, the court held that "[t]he 2016 [agreement] unambiguously requires that a union member be an active employee on the date of distribution in order to receive retroactive wage payments. The thirty-four plaintiffs that retired prior to the ratification of the 2016 [agreement] are not entitled to retroactive wages, as they were not 'active employees' on the dates of distribution. The plaintiffs Helland and Monk retired after the ratification but prior to the distribution date of the first payment. Accordingly, they also do not meet the requirements set out to receive retroactive wage payments. O'Connell, who also retired after the ratification, was eligible for a portion of the retroactive wages as evidenced by receiving the first payment; however, he lost his eligibility when he retired on November 19, 2019, prior to the distribution dates for the two additional retroactive wage payments. Accordingly, the court concludes that the defendant is not liable for retroactive payments or any further distributions to the plaintiffs . . . ." This appeal followed.

On appeal, the plaintiffs claim that the court improperly determined that they were not entitled to retroactive wage payments pursuant to the 2016 agreement. Specifically, they contend that "[s]imply because they retired prior to the enactment of the 2016 [agreement] does not mean the [defendant] can ignore the stipulated meaning of retroactive and refuse to pay money earned by these police officers during the retroactive period

---

[2] The complaint also alleged unjust enrichment. The court rejected this claim, determining that the plaintiffs asserted the claim under the theory of negligent misrepresentation and that it "does not consider this contention because the plaintiffs allege no negligent misrepresentation claim and have not explained how this theory relates to their claim of unjust enrichment beyond this bare assertion." On appeal, the plaintiffs' brief focuses on the court's rejection of their breach of contract claim.

under that agreement" and that, "when employees retire within the effective dates of a contract that provides retroactive wages for periods worked under an expired contract, those retired employees are entitled to said retroactive wages." We are not persuaded.

We begin with the following relevant legal principles and standards. "Principles of contract law guide our interpretation of collective bargaining agreements."[3] (Internal quotation marks omitted.) *Russo* v. *Waterbury*, 304 Conn. 710, 720, 41 A.3d 1033 (2012). "[T]he intent of the parties is to be ascertained by a fair and reasonable construction of the written words and . . . the language used must be accorded its common, natural and ordinary meaning and usage where it can be sensibly applied to the subject matter of the contract. . . . Where the language of the contract is clear and unambiguous, the contract is to be given effect according to its terms. . . . [When] there is definitive contract language, the determination of what the parties intended by their . . . commitments is a question of law [over which our review is plenary]." (Internal quotation marks omitted.) *Fiorillo* v. *Hartford*, 212 Conn. App. 291, 301–302, 275 A.3d 628 (2022).

The 2016 agreement provides for the distribution of one third of the retroactive wage payments to be paid, respectively, on November 14, 2019, July 1, 2020, and in July, 2021. It further provides that, "[i]n order to be eligible for these payments, members must be an active employee on the date of distribution."

In support of their argument, the plaintiffs rely on the meaning of the word "retroactive," as stipulated by the parties to be defined as "applying to a period prior

---

[3] "The elements of a breach of contract action are the formation of an agreement, performance by one party, breach of the agreement by the other party and damages." (Internal quotation marks omitted.) *Rosenthal* v. *Bloomfield*, 178 Conn. App. 258, 263, 174 A.3d 839 (2017).

to enactment."[4] (Internal quotation marks omitted.) The definition of the word retroactive, however, does not, by itself, entitle the plaintiffs to retroactive wage payments. Rather, the 2016 agreement requires that an individual be an "active employee" on the date of distribution in order to receive the retroactive wage payments distributed on those dates.

The agreement uses the adjective "active" to precede the term "employee" thereby indicating *current* employment status. See *Garcia* v. *Hartford*, 292 Conn. 334, 343, 972 A.2d 706 (2009) ("[T]he adjectives that precede the term employee in . . . the agreement—'fulltime, permanent' and 'probationary'—indicate *current* employment status. A retiree undoubtedly would not have either a full-time, permanent or a probationary status." (Emphasis in original.)). Additionally, "[w]e ordinarily look to the dictionary definition of a word

---

[4] The plaintiffs also argue that § 7-475, which provides that, "[i]n the event an agreement expires before a new agreement has been approved by the municipal employer and the employee organization, the terms of the expired agreement shall remain in effect until such time as a new agreement is reached and approved," cannot "be interpreted to mean that if an employee retires between contracts with a municipality, he should not receive retroactive wages specifically identified for periods of time he was still an employee of said municipality." The language of § 7-475, however, is not at issue; rather, the question presented is whether the court properly determined that the defendant did not breach the terms of the agreement between the parties.

The plaintiffs additionally argue that the defendant must recalculate the impact that the retroactive wage increase would have on pension benefits. The parties had agreed in the stipulation that, if the trial court found the defendant liable for any or all retroactive wage payments to the plaintiffs, only then will the defendant be required to recalculate pension benefits owed. Because we affirm the judgment of the trial court, the plaintiffs cannot prevail on this argument.

The plaintiffs further argue that there is no evidence to support (1) a claim that they could have anticipated that the defendant would fail to pay them retroactive wages and (2) the defendant's assertion in the trial court that the plaintiffs were cherry picking contractual language. These arguments have no bearing on the interpretation of the language of the contract and therefore we will not review them further.

to ascertain its commonly approved usage. . . . Webster's Third New International Dictionary (1993), for example, defines the term employee as '1: *one employed* by another [usually] in a position below the executive level and [usually] for wages 2: in labor relations: any worker *who is under wages or salary* to an employer and who is not excluded by agreement from consideration as such a worker . . . .' . . . See also Black's Law Dictionary (8th Ed. 2004) (defining employee as '[a] person who works in the service of another person [the employer] under an express or implied contract of hire, under which the employer has the right to control the details of work performance'). These definitions make it evident that . . . the currency of the relationship is paramount." (Citations omitted.) Id., 345; see also *Allied Chemical & Alkali Workers of America, Local Union No. 1* v. *Pittsburgh Plate Glass Co.*, 404 U.S. 157, 167–68, 92 S. Ct. 383, 30 L. Ed. 2d 341 (1971) ("An 'employee,' according to all standard dictionaries, according to the law as the courts have stated it, and according to the understanding of almost everyone . . . means someone who works for another for hire. . . . The ordinary meaning of 'employee' does not include retired workers; retired employees have ceased to work for another for hire." (Citations omitted; emphasis omitted.)).

Therefore, according to the terms of the 2016 agreement, only active employees, which term does not include retirees, on the date of distribution can receive retroactive wage payments. The 2016 agreement provides for three dates of distribution: November 14, 2019, July 1, 2020, and July, 2021. Thirty-four of the thirty-seven plaintiffs retired prior to the ratification of the 2016 agreement and under the provisions of the 2011 agreement and were not entitled to retroactive wage payments under the 2016 agreement. The plaintiffs Helland and Monk retired after the ratification of the 2016

agreement but before the first distribution date. The thirty-four plaintiffs in addition to Helland and Monk all retired prior to the first distribution date of November 14, 2019, and were not active employees as of that distribution date or any subsequent distribution dates and, therefore, were not entitled to receive any retroactive wage payments. The remaining plaintiff, O'Connell, retired on November 19, 2019, and therefore was entitled to and received the first distribution of retroactive wage payments on November 14, 2019, but was not eligible for the remaining retroactive wage payments because he was retired as of the second and third distribution dates. Because the defendant's actions regarding the distribution of the retroactive wage payments to the plaintiffs did not violate the terms of the 2016 agreement, we conclude that the court properly found for the defendant on the plaintiffs' breach of contract claim.

The judgment is affirmed.

In this opinion the other judges concurred.