******************************************************

The "officially released" date that appears near the beginning of an opinion is the date the opinion will be published in the Connecticut Law Journal or the date it is released as a slip opinion. The operative date for the beginning of all time periods for the filing of postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying an opinion that appear in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced or distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# EMMANUEL CRUZ *v.* CITY OF WATERBURY ET AL.
## (AC 47154)

Cradle, C. J., and Westbrook and Harper, Js.

*Syllabus*

The plaintiff, a former Waterbury police officer who suffered a work-related injury, appealed from the trial court's judgment dismissing in part and denying in part his administrative appeal from the decision of the defendant Retirement Board of the City of Waterbury, which had denied his application for a disability pension, and from the court's judgment dismissing his breach of contract claim with respect to the board and denying that claim with respect to the defendant city. The plaintiff claimed, inter alia, that the court committed plain error by failing to consider and analyze an allegedly applicable statute (§ 31-71f) regarding certain information an employer must provide to employees, which the parties did not raise in their arguments before the court. *Held*:

This court declined to reach the merits of the plaintiff's claim regarding the trial court's failure to consider § 31-71f, as the plaintiff failed to adequately brief it.

The trial court did not improperly deny the plaintiff's administrative appeal from the board's denial of his application for disability retirement and pension benefits, the court having properly determined that the plaintiff did not have a "work-related disability" as defined under the city's ordinances (§§ 35.035 and 35.073), as there was substantial evidence that the city intended to and did offer the plaintiff a qualifying job pursuant to § 35.035 that he could perform.

The board properly did not award any retroactive payments under § 35.073 of the city's ordinances, as it determined that the plaintiff was not eligible for disability benefits.

The plaintiff's claim that § 35.035 of the city's ordinances required the city to offer him a job with a base pay rate of at least 75 percent of his total compensation as a police officer, not his base pay rate, was unsupported by the language of the ordinance.

The trial court properly dismissed the administrative appeal with respect to the city, as the plaintiff provided no legal authority to support bringing an administrative appeal against the city, which was not involved in rendering the administrative decision.

The plaintiff could not prevail on his claim that the trial court improperly denied his breach of contract claim with respect to the city, as the plaintiff failed to demonstrate that the city violated any ordinance with respect to disability pension benefits and, therefore, failed to establish a breach of

the collective bargaining agreement between the city and the plaintiff's former union.

The trial court properly dismissed the plaintiff's breach of contract claim with respect to the board, as the board was not a proper party to the claim because it was not a party to the collective bargaining agreement.

Argued April 21—officially released September 16, 2025

*Procedural History*

Appeal from the decision of the defendant Retirement Board of the City of Waterbury denying the plaintiff's application for a disability pension and action to recover damages for breach of contract, and for other relief, brought to the Superior Court in the judicial district of Waterbury and tried to the court, *Cordani, J.*; judgment denying in part and dismissing in part the administrative appeal and denying in part and dismissing in part the breach of contract action, from which the plaintiff appealed to this court. *Affirmed.*

*Robert C. Lubus, Jr.*, with whom was *Donald J. Trella*, for the appellant (plaintiff).

*Daniel J. Foster*, corporation counsel, for the appellees (defendants).

*Opinion*

WESTBROOK, J. The plaintiff, Emmanuel Cruz, a former Waterbury police officer whose employment was terminated after he suffered a work-related injury that rendered him unable to return to full-time police work, brought the underlying combined administrative appeal and breach of contract action against the defendants, the city of Waterbury (city) and the Retirement Board of the City of Waterbury (board), challenging the denial of his application for a disability pension. The plaintiff now appeals from the judgment of the trial court rendered in favor of the defendants. The plaintiff claims that the trial court (1) committed plain error by

failing to consider and analyze General Statutes § 31-71f (a), despite the parties' failure to raise that statute in their arguments before the court,[1] (2) improperly denied, as to the board, and dismissed, as to the city, count one of his complaint asserting an administrative appeal from the board's denial of his application for disability retirement and pension benefits, and (3) improperly denied, as to the city, and dismissed, as to the board, count two of his complaint asserting a breach of the collective bargaining agreement that governed the terms of his employment.[2] For the reasons that follow, we affirm the judgment of the court.

The record reveals the following facts, as set forth in the administrative record and by the court in its memorandum of decision, and procedural history. As previously indicated, the plaintiff was a police officer employed by the city. He injured himself on the job when he smashed a car window with his right, dominant arm in order to apprehend a criminal suspect. A resulting injury to his right hand rendered him unable to return to full-time work as a police officer, and the chief of police terminated his employment on April 8,

---

[1] General Statutes § 31-71f (a) provides: "Each employer shall: (1) Advise his employees in writing, at the time of hiring, of the rate of remuneration, hours of employment and wage payment schedules, and (2) make available to his employees, either in writing or through a posted notice maintained in a place accessible to his employees, any employment practices and policies or change therein with regard to wages, vacation pay, sick leave, health and welfare benefits and comparable matters."

Although § 31-71f has been amended by the legislature since the events underlying this case; see Public Acts, Spec. Sess., June, 2021, No. 21-2, § 4; those amendments have no bearing on the merits of this appeal. In the interest of simplicity, we refer to the current revision of the statute.

[2] The plaintiff's statement of the issues in his appellate brief sets forth seven purported claims. We view several of these claims, however, as more properly characterized as arguments in support of the plaintiff's principal claims as reflected and outlined in the table of contents of the plaintiff's brief. For ease of discussion and clarity, we have combined and restated the plaintiff's claims in a manner that aligns more closely with the parties' briefing.

2019. In conjunction with the termination, the chief of police submitted a disability pension application on behalf of the plaintiff to the defendant board. The board denied the application at a meeting held on March 9, 2020.

Specifically, the board determined that the plaintiff did not qualify for a disability pension under §§ 35.035 and 35.073 of the Waterbury Code of Ordinances (ordinances).[3] Section 35.073 (C) (1) provides in relevant part that a Waterbury police officer "who incurs a *work-related disability* in the line of duty" is entitled to receive a disability pension, and § 35.035 defines "work-related disability" in relevant part as "[t]he total and permanent inability of a participant with at least five years of service, determined at the time that the participant ceases to be in pay status, to perform all of the essential functions of the participant's current job, *and the functions of any other job offered to the participant by the city in its absolute discretion which has a base pay rate of at least 75% of the participant's current job*, by reason of any medically determinable physical or mental impairment caused by or resulting from a work-related accident, injury or illness . . . ." (Emphasis added.) The board determined that the city had a building facility coordinator position available for the plaintiff that he could perform and that had a base pay rate of $56,570, which was more than 75 percent of the base pay rate of $75,427 that the plaintiff earned in his previous position as a police officer, and, therefore, he did not have a "work-related disability" for purposes of disability pension eligibility under § 35.035. The board invited the plaintiff and his attorney to discuss the new position further with the city's assistant corporation

---

[3] The board cited to a prior numbering scheme for the relevant ordinances, whereas, before the trial court and this court, the parties cite to the presently operative scheme. We, like the parties, will cite to the ordinances according to their current numbering.

counsel and human resources director (HR director) after the meeting.

The plaintiff commenced the underlying trial court action on April 8, 2020. In count one of the operative complaint, he sought review of the board's decision that he did not have a "work-related disability" under § 35.035 of the ordinances that entitled him to a disability pension. He claimed that the defendants violated §§ 35.035 and 35.073 of the ordinances because the building facility coordinator position was never formally offered to him in writing, the terms of employment were vague and inconsistent, and the stated base pay rate was actually less than 75 percent of his pay as a police officer. He also claimed that the defendants violated § 35.073 (D), which provides that "[t]he disability pension benefit shall be payable on the first day of the month following the participant's termination of service with the city as the result of the disability," because he did not receive the disability pension payments to which he was entitled following his termination of service due to his disability on April 8, 2019.

Count two of the operative complaint alleged a breach of contract claim premised on a theory that the aforementioned ordinances were incorporated into the collective bargaining agreement between the city and the Waterbury Police Union, Brass City Local, Connecticut Alliance of City Police (union), which governed the plaintiff's employment as a police officer, and that the same violations of the ordinances alleged in the administrative appeal also constituted a breach of the collective bargaining agreement. Both counts of the complaint were brought against both defendants.

The trial court, *Cordani, J.*, conducted a hearing with respect to the count asserting an administrative appeal and a trial de novo on the breach of contract count. Thereafter, on November 17, 2023, the court issued a

memorandum of decision in favor of the defendants. The trial court made several factual findings in connection with the breach of contract count, including that "[t]he position offered to the plaintiff, and discussed at the March 9, 2020 board meeting, was that of a building facility coordinator for the Silas Bronson Library, which position had a salary range of $45,000 to $65,000 and was being offered to the plaintiff at a salary of $56,570 per year, which was 75 percent of his base rate of pay as a police officer at $75,426.96 per year, [and] [t]he benefits provided with the position were to follow the benefits provided by the plaintiff's former bargaining unit, meaning he would receive the same benefits as he did as a police officer"; "[t]he plaintiff was capable of performing the functions of a building facility coordinator"; "[t]he position as a building facility coordinator was offered to the plaintiff and he had the ability to take the position by accepting it"; and "[t]he plaintiff did not accept the position as a building facility coordinator." The trial court noted that "[t]he plaintiff's nonacceptance of the position occurred in two ways. First, [the city's HR director] credibly testified that the plaintiff affirmatively refused the job offer. Second, it is clear that, although the plaintiff could have accepted the position, he did not do so."

With respect to the administrative appeal as set forth in count one of the complaint, the trial court held, contrary to the plaintiff's claims, that there was substantial evidence in the record that the city had offered him the building facility coordinator position with a base pay rate of at least 75 percent of his base pay rate as a police officer, which position he was capable of performing, and, accordingly, he did not have a "work-related disability" for purposes of qualifying for a disability pension under §§ 35.035 and 35.073 of the ordinances. The trial court explained in relevant part: "The record contains substantial evidence that the city

offered the plaintiff such a job. First, on February 26, 2020, the board sent [the city's] HR director a memo inquiring whether a qualifying job existed. The HR director signed off on the memo confirming that the job of building facility coordinator met the pay requirement and that the plaintiff could perform the job despite his injury. Then, at the March 9, 2020 board meeting, the motion approved by the board explicitly denied the pension because the city was offering the plaintiff the building facility coordinator job as certified by the HR director. The board then invited the plaintiff to discuss the job with the HR director who was at the meeting. The transcript of the foregoing at the March 9, 2020 board meeting coupled with the memo to the HR director is substantial evidence that the board and the city planned to offer the plaintiff a qualifying job and did exactly that at the meeting. There is also substantial evidence that the plaintiff rejected the offer."

In accordance with well established principles governing administrative appeals brought to the Superior Court; see, e.g., *Recycling, Inc.* v. *Commissioner of Energy & Environmental Protection*, 179 Conn. App. 127, 139–40, 178 A.3d 1043 (2018); the trial court concluded that there was substantial evidence supporting the board's decision and that the board's decision was not unlawful, in excess of the board's authority, clearly erroneous, or arbitrary or capricious, such that it should be affirmed. The trial court further dismissed count one as to the city on the ground that the city was not an appropriate party with respect to that count because it was not an administrative agency and had not rendered the administrative decision at issue.

With respect to count two alleging breach of contract, the court ruled in favor of the city, agreeing that the relevant collective bargaining agreement provided for pension and retirement benefits in accordance with the city's ordinances but holding that, for the same reasons

set forth in the decision on count one of the plaintiff's complaint, the plaintiff was ineligible for a disability pension under the ordinances and, therefore, under the collective bargaining agreement. Accordingly, there was no breach of the contract by the city. The trial court further dismissed count two as to the board on the ground that the board was not a party to the collective bargaining agreement at issue and, therefore, was not a proper party to the breach of contract count. This appeal followed.

I

The plaintiff first claims that, despite the parties having never raised § 31-71f in their arguments before the court, the court nevertheless committed plain error when it failed to consider and apply § 31-71f (a) in resolving the underlying action. As previously noted, § 31-71f (a) provides in relevant part: "Each employer shall: (1) Advise his employees in writing, at the time of hiring, of the rate of remuneration, hours of employment and wage payments schedules . . . ." The plaintiff argues that the applicability of this statute "changes the outcome of this case" because the defendants admitted in their answer that the only document provided to the plaintiff with respect to the building facility coordinator position was a written job description that did not fully satisfy the criteria set forth in § 31-71f (a) (1), and, therefore, no job offer was made in accordance with §§ 35.035 and 35.073 of the ordinances that would preclude him from claiming a "work-related disability" for purposes of disability pension eligibility.

The defendants respond that the plaintiff's claim is inadequately briefed and, thus, is unreviewable. The defendants argue that the plaintiff simply states that plain error review is available and cites to a number of cases in which appellate courts have undertaken plain error review, but he fails to set forth the standards

applicable to plain error review or to apply those standards to the facts and circumstances of the present action. The defendants also respond, in the alternative, that the trial court did not commit plain error by failing to apply § 31-71f because, by its plain language, that statute is inapplicable. In particular, the defendants note that the statute requires an employer to "[a]dvise *his employees* in writing, *at the time of hiring*, of the rate of remuneration, hours of employment and wage payment schedules"; (emphasis added) General Statutes § 31-71f (a) (1); and the plaintiff was not a newly hired employee at any point following the 2019 termination of his employment. We conclude, for the reasons given by the defendants, that the plaintiff has abandoned this claim as a result of an inadequate brief.

"[The plain error] doctrine, codified at Practice Book § 60-5, is an extraordinary remedy used by appellate courts to rectify errors committed at trial that, although unpreserved, are of such monumental proportion that they threaten to erode our system of justice and work a serious and manifest injustice on the aggrieved party. . . . It is axiomatic that, [t]he plain error doctrine . . . is not . . . a rule of reviewability. It is a rule of reversibility. . . . Put another way, plain error review is reserved for only the most egregious errors. When an error of such magnitude exists, it necessitates reversal. . . . [I]t is not enough for the defendant simply to demonstrate that his position is correct. Rather, the party seeking plain error review must demonstrate that the claimed impropriety was so clear, obvious and indisputable as to warrant the extraordinary remedy of reversal." (Citations omitted; internal quotation marks omitted.) *State* v. *Kyle A.*, 348 Conn. 437, 445, 307 A.3d 249 (2024). Our Supreme Court has "noticed plain error in the failure of a trial court to apply a *clearly relevant* statute to the case before it." (Emphasis added; internal quotation marks omitted.) *Ralto Developers, Inc.* v.

*Environmental Impact Commission*, 220 Conn. 54, 59, 594 A.2d 981 (1991).

"Analysis, rather than mere abstract assertion, is required in order to avoid abandoning an issue by failure to brief the issue properly. . . . [When] a claim . . . receives only cursory attention in the brief without substantive discussion or citation of authorities, it is deemed to be abandoned. . . . For a reviewing court to judiciously and efficiently . . . consider claims of error raised on appeal . . . the parties must clearly and fully set forth their arguments in their briefs." (Internal quotation marks omitted.) *Sicignano* v. *Pearce*, 228 Conn. App. 664, 690–91, 325 A.3d 1127 (2024), cert. denied, 351 Conn. 908, 330 A.3d 881 (2025).

Here, the plaintiff's claim consists of the statement that "[o]ur Supreme Court routinely has held that a court's failure to apply an applicable statute is plain error"; a string cite of cases in which plain error was found on the basis of a court's failure to consider a statute that was " 'plain[ly]' " or " 'clearly' " applicable; see, e.g., *Curley* v. *Phoenix Ins. Co.*, 220 Conn. App. 732, 752–53 n.10, 299 A.3d 1133 (citing cases), cert. denied, 348 Conn. 914, 303 A.3d 260 (2023); and a conclusory statement that § 31-71f applies in the present case and "changes the outcome of [the] case." He does not expressly state the standard for plain error review in his principal brief. He does not attempt to apply the standard to the facts of the present action. Moreover, he does not provide any real substantive discussion regarding why § 31-71f was so clearly relevant that the court's failure to address it sua sponte was an error of such "monumental proportion" that it threatened "to erode our system of justice and work a serious and manifest injustice . . . ." (Internal quotation marks omitted.) *State* v. *Kyle A.*, supra, 348 Conn. 445. In short, the plaintiff has failed to meet the minimum threshold required for review of his plain error claim. Accordingly,

we decline to reach the merits of the claim on the ground that it is inadequately briefed and deemed abandoned.[4]

## II

The plaintiff next claims that the court improperly denied in part and dismissed in part count one of his complaint asserting an administrative appeal from the board's denial of his application for disability retirement and pension benefits. First, he argues that there is not substantial evidence in the record that he was offered a job with a qualifying salary for purposes of § 35.035 of the ordinances. Second, he argues that the court never properly acknowledged that the defendants had failed to pay him disability pension benefits for the period of time between the termination of his employment and the denial of his disability pension application and that he is entitled to such payments under the plain language of the ordinances. Third, the plaintiff argues that the trial court misinterpreted § 35.035 by indicating that the city had discretion under that ordinance to offer the plaintiff a job with a base pay rate of at least 75 percent of the *base pay rate* of the participant's current job whereas the plain language of the ordinance refers to "base pay rate" only with respect to the new job, not the current one, nor can such a construction reasonably be inferred. Finally, the plaintiff argues that the trial court improperly dismissed the administrative appeal with respect to the city because the city's actions were so inextricably bound up with the decision of the board that the city is a proper party to the administrative appeal. For the reasons that follow, we reject the plaintiff's claim.

---

[4] Even if we were to overlook the inadequacy of the briefing and review the plaintiff's claim on the basis of the minimal briefing provided, it inevitably would fail on its merits because, on its face, § 31-71f is not plainly or clearly applicable to the circumstances at issue in this case, and, thus, the court's failure to address it sua sponte could not have constituted plain error.

"It is well established that [j]udicial review of [an administrative agency's] action is governed by the [Uniform Administrative Procedure Act, General Statutes § 4-166 et seq.] . . . and the scope of that review is very restricted.[5] . . . Review of an appeal taken from the order of an administrative agency . . . is limited to determining whether the agency's findings are supported by substantial and competent evidence and whether the agency's decision exceeds its statutory authority or constitutes an abuse of discretion. . . . [E]vidence is sufficient to sustain an agency finding if it affords a substantial basis of fact from which the fact in issue can be reasonably inferred. . . . [T]he possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence. . . . Ultimately, [t]he question is not whether the [reviewing] court would have reached the same conclusion but whether the record before the [agency] supports the action taken." (Citations omitted; footnote added; internal quotation marks omitted.) *Commission on Human Rights & Opportunities* v. *Dance Right, LLC*, 230 Conn. App. 53, 72, 329 A.3d 1008 (2025).

## A

We first address the plaintiff's argument that no substantial evidence exists that he was offered a job with a qualifying salary for purposes of § 35.035 of the ordinances. He posits that the base pay rate of the building facility coordinator position was less than 75 percent of his pay as a police officer. According to the plaintiff,

---

[5] "This court in *Greene* v. *Waterbury*, 126 Conn. App. 746, 749, 12 A.3d 623 (2011), determined that when a retirement board was created by the Waterbury City Code and granted such board powers and duties similar to that of an administrative agency, this court review[s] the actions of the board under the . . . standard[s] that [govern] review of an administrative agency's actions." (Internal quotation marks omitted.) *Vanghele* v. *Fairfield*, 156 Conn. App. 714, 721, 115 A.3d 474 (2015).

the board improperly determined his pay as a police officer to be $75,427, whereas a pension worksheet prepared by the city's finance director listed his pay as a police officer at $75,578.72. If the higher rate is utilized, in order to amount to at least 75 percent of his pay as a police officer, the base pay rate for the building facility coordinator position needed to be at least $56,684, rather than the $56,570 cited by the board.[6] The plaintiff also asserts that he never received a formal offer for the building facility coordinator position because the only written documentation given to him with respect to that position was a February 26, 2020 internal memorandum that he did not receive until after he filed his administrative appeal.[7]

We agree with the defendants that the trial court properly determined that there was substantial evidence that the city intended to and did offer the plaintiff a qualifying job under § 35.035 of the ordinances. It is reasonable to infer from the transcript of the March 9, 2020 board hearing in combination with the February 26, 2020 memorandum from the city's HR director to the board indicating the availability of the building facility

---

[6] In his principal brief, the plaintiff states that he believes the proper basis for the 75 percent calculation should be his total earnings as a police officer, including overtime payments, night and weekend differentials, and bonuses, but that he is adopting "the defendants' preferred interpretation" of the amount to demonstrate that he should still prevail on that basis.

[7] The plaintiff further asserts: "In other words, the [board] received and acted on secret information that was not part of the record and was not provided to [him] prior to the denial of his application, thereby violating his right to due process under the fifth and fourteenth amendments to the United States constitution and article [first], § 8, of the Connecticut constitution." The plaintiff does not otherwise address a claimed due process violation in the body of his principal brief. As we set forth in detail in part I of this opinion, "[a]nalysis, rather than mere abstract assertion, is required in order to avoid abandoning an issue by failure to brief the issue properly." (Internal quotation marks omitted.) *Sicignano* v. *Pearce*, supra, 228 Conn. App. 690. Because the plaintiff does not adequately brief his alleged constitutional violation, we decline to review it.

coordinator position that the plaintiff was offered the position and declined it.

Further, the board's citation to $75,427 as the pay received by the plaintiff as a police officer is supported by the February 26, 2020 memorandum. Even if the figure from the pension worksheet is used, we agree with the defendants' contention that "the difference between [the] two possible prior base pay rates is $151.76. Seventy-five percent of that difference is $113.82 per year. . . . [T]his discrepancy in the record does not render the board's denial of the plaintiff's disability pension application an abuse of discretion."

B

We turn next to the plaintiff's argument that the trial court failed to acknowledge that the defendants improperly had failed to pay him disability pension benefits for the period of time between the termination of his employment and the denial of his disability pension application and that he was entitled to such payments under the plain language of the ordinances. He relatedly asserts that the board improperly declined to retroactively award him such payments when it denied his application.

We are unconvinced, on the record presented, that the plaintiff was entitled to disability pension benefits while his disability pension application was pending from May, 2019, to March, 2020. Section 35.073 of the ordinances, on which the plaintiff relies, provides for disability pension benefits only when an applicant has a "work-related disability," which the board determined the plaintiff did not have due to the offer of a qualifying alternative position under § 35.035 of the ordinances. Nothing in the ordinances provides that the plaintiff was entitled to receive disability pension benefit payments while his application was pending. Section 35.073 (D) provides only that benefits become "payable" on the

first day of the month following the termination of employment. We read this provision as simply establishing the start date from which benefits would accrue upon a finding of eligibility. In other words, a more reasonable interpretation of the ordinance would be that the plaintiff would have been entitled to receive benefits during the pendency of his application when and if the board ultimately determined that he qualified for benefits in the first place, at which point such benefits would be awarded retroactively. Because the board determined, however, that he was not eligible for benefits, the board properly did not award any retroactive payments.[8]

C

The plaintiff next argues that the trial court misinterpreted § 35.035 of the ordinances when it suggested that the city had discretion to offer the plaintiff a job that has a base pay rate of at least 75 percent of the *base pay rate* of the participant's current job because the plain language of the ordinance does not refer to "75 percent of the base pay rate" nor can such a construction be inferred. The plaintiff asserts that 75 percent of the participant's current job should include all compensation, including overtime, weekend/night differentials, bonuses, etc. earned by the plaintiff as a

---

[8] We note that, both in conjunction with this argument and in support of his appeal more generally, the plaintiff takes issue with the eleven month delay between the date of the termination of his employment and the date the board heard and rendered a decision on his application. We agree with the plaintiff that it is important to have timely resolutions of disability pension applications because unwarranted delays can have significant adverse financial impacts on individuals awaiting resolution of their applications. Although the defendants were unable to provide this court with any compelling rationale for the lengthy delay in the present case, the plaintiff has not directed us to any ordinance, statutory provision or other legal authority that required the board to meet and render a decision within any prescribed time frame, nor can we conclude, on the basis of the present record, that the board's delay in the present case was arbitrary, exceeded the board's authority or constituted an abuse of its discretion.

police officer in the year before the injury that disabled him from duty and that the base pay rate cited by the city in its offer of the building facility coordinator position was insufficient under § 35.035 as a result thereof. This assertion, however, is unsupported by any language in § 35.035 and also cannot be inferred when the ordinance is read in its entirety, particularly the express reference to the "base pay rate" with respect to the alternative position.

D

Finally, the plaintiff acknowledges that the trial court correctly concluded that the city is not an administrative agency and did not issue the administrative decision from which he brings this appeal. He nonetheless contends that the city is the entity tasked with offering a qualifying job under § 35.035 of the ordinances and that "[t]he [city's] actions (or lack thereof) are inextricably bound up with the decision of the [board]," such that it is a proper defendant to the claim. We are not persuaded.

The plaintiff has provided no legal authority for bringing an administrative appeal against an entity that was not the administrative agency involved in rendering the administrative decision at issue. Moreover, as the defendants argue, even if the trial court erred in its dismissal, any such error was harmless because the city would have been entitled to a judgment in its favor for the same reasons that the appeal was denied with respect to the board. Having considered all of the plaintiff's arguments to the contrary, we are not persuaded that the trial court improperly dismissed the claim against the city.

In summary, the trial court's conclusion that the plaintiff was offered a position with a base pay rate that was at least 75 percent of his base pay rate as a police officer and that he rejected said position, such

that he did not have a "work-related disability" for purposes of disability pension eligibility under § 35.035 of the ordinances, appears to be substantiated by evidence in the record. The plaintiff's disagreements with respect thereto seem to result from his differing interpretations of the relevant ordinances and the underlying facts rather than from an identified lack of evidence or a belief that the board acted illegally or in excess of its authority, and he does not cite to or apply any pertinent authority in support of his positions. Because the plaintiff has not established any basis for reversing the trial court's judgment as to his administrative appeal, we reject this claim.

### III

Finally, the plaintiff claims that the court improperly denied in part and dismissed in part his breach of contract count. The plaintiff argues that all relevant terms of the city's ordinances are incorporated by reference into the collective bargaining agreement, and, therefore, the defendants' violations of those ordinances in the manner argued with respect to the administrative appeal also constituted a breach of the provision of the collective bargaining agreement that provided in relevant part that employees of the Waterbury Police Department are entitled to retirement benefits pursuant to the ordinances. The plaintiff also argues that the trial court improperly dismissed the board as a defendant to the breach of contract count because the board was established by the city charter with a duty to act legally and, "[t]o the extent that an official act of the [board] violates the . . . collective bargaining agreement, it becomes a proper defendant in this case." We disagree with both arguments.

"It is axiomatic that a collective bargaining agreement is a contract. . . . Like any other contract, a collective bargaining agreement may incorporate by reference

other documents, statutes or ordinances to be included within the terms of its provisions. . . . [If] a contract expressly incorporates a statutory enactment by reference, that enactment becomes part of a contract for the indicated purposes just as though the words of that enactment were set out in full in the contract." (Citations omitted; emphasis omitted; internal quotation marks omitted.) *Greene* v. *Waterbury*, 126 Conn. App. 746, 751, 12 A.3d 623 (2011). "The elements of a breach of contract action are the formation of an agreement, performance by one party, breach of the agreement by the other party and damages." (Internal quotation marks omitted.) *Lalli* v. *New Haven*, 230 Conn. App. 863, 867 n.3, 332 A.3d 1073, cert. denied, 351 Conn. 924, 333 A.3d 796 (2025). "The determination of whether a contract has been materially breached is a question of fact that is subject to the clearly erroneous standard of review. . . . A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." (Internal quotation marks omitted.) *Regional School District 8* v. *M & S Paving & Sealing, Inc.*, 206 Conn. App. 523, 531, 261 A.3d 153 (2021).

We first note that "[o]rdinarily a court may entertain a suit by an individual employee to enforce the terms of a collective bargaining agreement only if the agreement so provides. . . . An employee does, however, have standing to enforce the terms of a collective bargaining agreement if the employee claims that the union has breached its duty of fair representation." (Citation omitted.) *Labbe* v. *Pension Commission*, 239 Conn. 168, 182, 682 A.2d 490 (1996). Here, the complaint did not include a count against the union for breach of the duty of fair representation. The city nevertheless did

not challenge the propriety of the breach of contract count on the ground that the plaintiff lacked standing to assert it. Because the parties have not raised or addressed any possible standing issue, and the record consequently is inadequate to determine whether such an issue exists, we decline to address it further.

Turning to the propriety of the court's resolution of the breach of contract count on its merits, all parties largely rely on the same arguments raised with respect to the administrative appeal. The defendants admit that the relevant provisions of the collective bargaining agreement provide the plaintiff with a right to retirement benefits in accordance with the city's ordinances. Nevertheless, they argue that the board properly determined that the plaintiff was not entitled to a disability pension pursuant to the ordinances, and, therefore, any reliance on a violation of the ordinances as the basis for a claim of a breach of the collective bargaining agreement is unfounded and was properly resolved in favor of the city. For the reasons set forth in part II of this opinion, which we will not repeat, we agree that the plaintiff failed to demonstrate that the city violated any ordinance with respect to disability pension benefits and, therefore, also failed to establish a breach of the collective bargaining agreement. Accordingly, the court properly ruled in favor of the city with respect to the breach of contract count.

We also reject the plaintiff's argument that the trial court improperly dismissed the breach of contract count with respect to the board. The board, which undisputedly is not a party to the collective bargaining agreement between the city and the plaintiff's union, was not a proper party to the breach of contract count because it is axiomatic that "[t]he obligation of contracts is limited to the parties making them, and, ordinarily, only those who are parties to contracts are liable for their breach. Parties to a contract cannot thereby

impose any liability on one who, under its terms, is a stranger to the contract, and, in any event, in order to bind a third person contractually, an expression of assent by such person is necessary." (Internal quotation marks omitted.) *FCM Group, Inc.* v. *Miller*, 300 Conn. 774, 797, 17 A.3d 40 (2011). Moreover, as with the court's dismissal of the city with respect to the administrative appeal count, even if the trial court erred in its dismissal of the board with respect to count two, any such error was harmless because the board would have been entitled to judgment as a matter of law for the same reasons that the court rendered judgment in favor of the city.

The judgment is affirmed.

In this opinion the other judges concurred.